UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CHAFFEE,<br><br>        Plaintiff,<br><br>     v.<br><br>DAVID CHIU, et al.,<br><br>        Defendants. | Case No. 11-cv-05118-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 95 |

       Currently before the Court is defendants' motion for summary judgment. The Court heard argument on that motion on December 11, 2013. Having considered the papers submitted and the arguments made, the Court GRANTS defendants' motion for summary judgment.

## BACKGROUND

       Plaintiff James Chaffee sues defendants City and County of San Francisco and Supervisor David Chiu for: (1) false arrest and false imprisonment; (2) battery committed by unlawful arrest; (3) violation of First Amendment rights under 42 U.S.C. § 1983; (4) unequal treatment under 42 U.S.C. § 1983; and (5) violation of Fourth Amendment rights under 42 U.S.C. § 1983. Mr. Chaffee's complaint stems from his removal from the September 13, 2011, Board of Supervisor's meeting and his subsequent detention by Sheriff's deputies.

       During the September 13, 2011 meeting, Mr. Chaffee spoke during public comment for two minutes without incident. Deposition of James Chaffee, Ex. A to Declaration of Frederick P. Sheinfield, at 27:2-6. Shortly thereafter, when another speaker was making public comment, plaintiff raised his voice and complained that people in the gallery were standing behind him and asked Supervisor David Chiu to instruct them to sit down. Chaffee Depo. at 32:2-9; 124:7-12; Declaration of Adrian Larkin, ¶ 5. Mr. Chaffee contends that he did not start the disruption, and that a disruption was already under way when plaintiff called out to Supervisor Chiu in an effort

"to call the president's attention to the fact that the rules were not being enforced and that the law abiding public, including plaintiff, was at some risk because the disruption was escalating and the rules were not being enforced." Oppo. Br. at 3; Chaffee Decl. ¶ 3. Mr. Chaffee admits, however, that his actions caused "more disturbance" to the meeting. Chaffee Depo., 124:21-25.

A shouting match erupted between Mr. Chaffee and some of the group of people standing in the gallery. Larkin Decl., ¶ 5; Declaration of David Chiu, ¶ 8. Profanity and racial epithets were used and threats were made. Larkin Decl., ¶ 5; Chiu Decl., ¶ 8. Mr. Chaffee admits that he shouted and used the "f-word," which in his judgment was "the minimal self-defense that was required to send the broader message that I would defend myself if necessary." Chaffee Depo., at 33:19-21; 124:13-17; Chaffee Decl., ¶ 3.[1] Mr. Chaffee testified that he was afraid for his safety, and that he was the victim of racial slurs and physical threats. Chaffee Depo., at 33:2-15; Oppo. Br. at 3. Mr. Chaffee contends that he cannot be considered as having initiated or continued the disruption because he only uttered one swear word, did not stand, and did not turn his head towards the other group except for one glance over his shoulder. Oppo. Br. at 3.

However, the Board meeting was disrupted and in "chaos." The Chair, Supervisor David Chiu, called a recess. Chiu Decl., ¶ 9; Larkin Decl., ¶ 5. Supervisor Chiu never instructed anyone, including any Deputy Sheriff, to remove Mr. Chaffee from the chambers or from City Hall. Chiu Decl., ¶ 10.

Deputy Sheriff Larkin was in the chamber and "observed" Mr. Chaffee raising his voice while another member of the public was speaking to complain about the people standing in the gallery. Larkin Decl., ¶ 5. Deputy Larkin also "heard" the profanity-laced shouting match between Mr. Chaffee and the group of men who were standing. *Id*. Deputy Larkin first approached the group of men and asked one of the men who had engaged with Mr. Chaffee to leave the Board chamber. *Id*., ¶ 6. The man complied, and with some of his friends accompanying him, was escorted into the hall by Deputy Larkin and left with Deputy Sheriff Jones. Larkin Decl., ¶¶ 6, 8.

---

[1] The only evidence about the incident provided by Mr. Chaffee is three sentences in his Declaration, submitted in support of his Opposition. Docket No. 104-1.

2

Deputy Larkin returned to the chamber and several members of the public told him that Mr. Chaffee started the dispute. Larkin Decl., ¶ 7. Deputy Larkin asked Mr. Chaffee to leave, repeating the request several times. *Id*. Mr. Chaffee refused to leave voluntarily, and told Deputy Larkin that he would not leave unless placed under arrest. Chaffee Depo., at 45:2-11; Larkin Decl., ¶ 7. Supervisor Jane Kim (who is not a defendant) told Deputy Larkin that Mr. Chaffee should leave the chamber. Larkin Decl., ¶ 7. Deputy Larkin called Acting Watch Commander Deputy Sheriff Staehely and when Staehely arrived, he observed Deputy Jones in the hall outside the chamber with the individual removed by Deputy Larkin. That individual and his group of friends appeared to be angry and hostile, and at least one person was arguing with Deputy Jones. Declaration of Brian Staehely, ¶ 5.

After Deputy Staehely entered the chamber, Larkin informed him of the situation and told him that Supervisor Kim asked Larkin to remove Mr. Chaffee from the chamber and that Mr. Chaffee had refused to leave unless he was placed under arrest. Larkin Decl., ¶ 8. Deputy Staehely approached Mr. Chaffee and repeatedly asked him to leave. Plaintiff refused and told him he would not leave unless placed under arrest. Chaffee Depo., at 48:5-11. Deputy Staehely then told Chaffee he was under arrest, and escorted Mr. Chaffee out of the chamber. Staehely Decl., ¶ 7. Mr. Chaffee did not resist leaving, he was not placed in handcuffs, and he did not suffer any physical injuries while he was being escorted out of the chamber.[2]

As the situation between Mr. Chaffee and the other man removed was hostile, and as threats had been made during the confrontation in the chamber, Deputy Staehely was concerned for plaintiff's safety and so he took Mr. Chaffee downstairs in City Hall. Staehely Decl., ¶ 8. Depute Staehely informed Mr. Chaffee that he was not being arrested, but detained. Staehely Decl., ¶ 9. Deputy Staehely told plaintiff that he had violated California Penal Code section 602[3]

---

[2] Mr. Chaffee does not dispute any of the facts introduced by the defendants regarding his refusal to voluntarily leave the chamber or his insistence that he would not leave unless placed under arrest. He says only that "I did not stand in the chamber at any time during the incident until I was told that I was under arrest." Chaffee Decl., ¶ 3.

[3] Penal Code 602.1(b) provides in relevant part that any person who intentionally interferes with the business of a public agency by obstructing or intimidating those attempting to carry on business, and who refuses to leave the premises of the public agency after being requested to leave by a peace officer is guilty of a misdemeanor.

by interfering with the lawful business of a public agency and then refusing to leave the premises. *Id*. He told Mr. Chaffee that he was not being arrested or charged, but that he would be transferred to the Hall of Justice at 850 Bryant and released. *Id*.

Mr. Chaffee was placed in a holding area in City Hall for around an hour. Larkin Decl., ¶ 10. Mr. Chaffee describes the holding area as a chain link cage and gate (which he claims was locked), two walls and a normal door. He did not know whether the normal door was locked. Chaffee Decl., ¶ 4. Mr. Chaffee says that during the hour he was in the holding area, his possessions were removed, he was denied the return of his newspaper to read, he was refused a chair to sit down upon, and when he asked to use the restroom he was told it would be arranged later, but it was not. Chaffee Decl., ¶ 5.

According to policy, Deputy Larkin pat searched Mr. Chaffee and handcuffed him. Mr. Chaffee asked to be handcuffed in front instead of behind his back, but that request was denied. Chaffee Decl., ¶ 6. Mr. Chaffee was taken out of City Hall in handcuffs "in full view of passersby on the street," and transported to 850 Bryant Street in a small, cramped van. Chaffee Decl., ¶ 6. Outside of 850 Bryant, Deputy Larkin removed the handcuffs and issued Mr. Chaffee a "Certificate of Release" under Penal Code section 851.6, indicating that he had been detained and not arrested.[4] Larkin Decl., ¶ 11. Deputy Larkin advised Mr. Chaffee that he should not return to City Hall that day for his own safety. Larkin Decl., ¶ 11. Mr. Chaffee contends that he was told his "treatment would be worse the next time" and that as a "condition of his release," that he "was not free to return to City Hall that day." Chaffee Decl., ¶ 8.

Plaintiff contends that the defendants' actions were "purely punitive" for no reason other than to deter him from further activism. Oppo. Br. at 4. In his Opposition brief, Mr. Chaffee complains – but submits no evidence – of insults at the Library Commission, being provoked and laughed at while making public testimony, being barred from attending "various meetings," and contends those prior incidents show the "causation" connecting his false arrest to his efforts to expose the influence of lobbyists in City government and the diversion of public funds. *Id*., 4-5.

---

[4] Penal Code 851.6 sets out the circumstances where an arrest and release is recorded as a detention.

He believes his removal from the chambers on September 13, 2011, was the result of the "political nature of" his "comments over the years." Chaffee Depo., at 150:20-22.

Plaintiff has a long history of speaking at Board of Supervisor's meetings, attending almost every meeting since 2002, and speaking during public comment about the San Francisco Public Library. Chaffee Depo. at 16:2-15. Before the September 13, 2011 meeting, he had never been removed from a Board of Supervisor's meeting. Chaffee Depo., 124:2-6. Mr. Chaffee admits that he and others have frequently spoken at public meetings about the library, and he has no evidence that anyone has been restricted from speaking or has been removed from a Board of Supervisor's meeting for speaking about the library. He was only aware of others being removed from the Board chamber for violating rules of conduct. Chaffee Depo., 149:11 -150:18. Plaintiff admits that he has received the same amount of time to speak during public comment at the Board of Supervisors' meetings as other members of the public. Since the meeting where he was removed, Mr. Chaffee has continued to speak at Board of Supervisors' meetings without incident and without being removed. Chaffee Depo., at 16:11-15; 99:6-25; 124:2-6.

Currently before the Court is the defendants' motion for summary judgment or partial summary judgment. Plaintiff opposes that motion, and asks, if the Court is inclined to find that defendants have demonstrated a prima facie case in support of their motion, that he be allowed to gather evidence to contradict defendants' evidence. Oppo. Br. at 11.

### LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that

party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id*. at 255.  In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*.  However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

### I. PLAINTIFF'S CONSTITUTIONAL CLAIMS

In order to state a 42 U.S.C. section 1983 claim against the Board of Supervisors and the Sherriff's Department, Mr. Chaffee must demonstrate that the constitutional deprivation he suffered was the product of a policy or custom of the local governmental unit. *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Allegations of random acts, or single instances of misconduct, however, are insufficient to establish a municipal custom. *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).[5]

In his deposition, the only "policy" that Mr. Chaffee identified was the unwritten policy that City officials and employees protect the "City family." Chaffee Depo., at 182: 21 – 185:25. Mr. Chaffee contended that implementation of this "policy" caused his arrest because Sheriff Larkin was "covering" for Supervisor Chiu, and Supervisor Chiu wanted Mr. Chaffee arrested because of Mr. Chaffee's repeated criticisms against the Friends of the Library group, who had

---

[5] Under section 1983, the Board of Supervisors or Sheriff's Department cannot be held responsible for the actions of the individual deputy sheriffs or the individual Board members. *See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.").

donated money to Supervisor Chiu. Chaffee Depo., at 187:23 – 188:5. Mr. Chaffee also expressed his belief that he was targeted for removal from the chambers based on the content of his speech; specifically "the political nature of my comments over the years." Chaffee Depo., 159: 20-22; *see also id.*, at 133:1-10. Other than Mr. Chaffee's inference that Supervisor Chiu removed him from the chambers on September 13, 2011, because he did not appreciate Mr. Chaffee's speech about graft at City Hall in connection with new neighborhood libraries, Mr. Chaffee had no other reason to believe he was removed because of his speech. Chaffee Depo., at 163:1 – 164:22.

In his Opposition brief, Mr. Chaffee argues that his arrest and removal from the Board meeting was "purely punitive" and an effort to stop Mr. Chaffee's history of activism, including his efforts to expose the influence of lobbyists in City government and the diversion of public funds. His arrest, he contends, was part of a "long campaign" by officials to protect the graft in City Hall and to punish him for his speech. Oppo. Br. at 4.

Defendants argue that there is no genuine issue of material fact whether the City has a policy or practice of removing individuals from Board of Supervisor meetings because of their speech. Defendants rely on Mr. Chaffee's own testimony that individuals have been removed only for violating the Board's rules. Chaffee Depo. at 149:11 – 150:15.

Liability will attach to the Board of Supervisors or Sheriff's Department *only* if Mr. Chaffee's "shows that his injury resulted from a 'permanent and well-settled' practice. . . ." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) overruled on other grounds by *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). In his Opposition, Mr. Chaffee presents no evidence to demonstrate that his arrest – the alleged violation of his First and Fourth Amendment rights under 42 U.S.C. § 1983 – was the result of any Board of Supervisor's or Sheriff's Department policy or practice. Instead, Mr. Chaffee relies solely on "inference, conjecture and speculation to explain" the reasons he believes he was arrested, which demonstrates that the challenged policies or practices (even if they existed and caused Mr. Chaffee's arrest) are "not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

1    There is simply no evidence of a City policy or practice to "protect the City family," to
2 protect graft in the City, or to punish those who speak out against graft. There is no testimony (by
3 declaration or deposition) from Mr. Chaffee or others showing that any of these policies or
4 practices exist, much less evidence that these policies or practices led to Mr. Chaffee's arrest on
5 September 13, 2011.[6] There has been no showing of any well-settled policy or practice that led to
6 Mr. Chaffee's arrest such that the Board of Supervisors or the Sheriff's Department can be held
7 liable. *See, e.g., Fogel v. Collins*, 531 F.3d 824, 835 (9th Cir. 2008) (granting summary judgment
8 to municipality because plaintiff "provided no evidence that [municipality] maintained an official
9 policy of suppressing political speech protected by the First Amendment or that any final
10 policymaking official made a decision to violate his rights.").

11    Defendants' Motion for Summary Judgment on Mr. Chaffee's constitutional claims against
12 the City and County, the Board of Supervisors and the Sheriff's Department is GRANTED.

## II. STATE LAW CLAIMS

### A. False Arrest and False Imprisonment

As an initial matter, "'false arrest' and 'false imprisonment' are not separate torts. False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology." *Collins v. City & Cnty. of San Francisco*, 50 Cal. App. 3d 671, 673 (Cal. Ct. App. 1975). In order to prove the tort, plaintiff must demonstrate that he was detained without consent and in absence of a lawful privilege for an appreciable length of time. *See Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994). There is no civil liability for false arrest or imprisonment in California for an officer who, at the time of arrest, had reasonable cause to believe that the arrest was lawful. Cal. Penal Code § 847(b)(1). Under California law, "an officer has probable cause for a warrantless arrest 'if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'" *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (quoting *People v. Adams*, 175 Cal.App.3d 855 (1985)).

---

[6] Mr. Chaffee provides no evidence of any policy or practice in his own declaration submitted in Opposition to the defendants' motion.

Here, the evidence demonstrates that Deputy Larkin observed Mr. Chaffee's role in the incident – his initial complaint to Supervisor Chiu about the behavior of the other people and the subsequent shouting and swearing. Larkin Decl., ¶ 5. Larkin's observations were confirmed by others in the chamber who told him that Mr. Chaffee had started the disruption. *Id.*, ¶ 7. Mr. Chaffee admits that while he did not start the disruption, he complained to Supervisor Chiu (when someone else was speaking in public comment), he swore at the people he believed were causing the disturbance, and his actions caused "more disturbance" in the chambers. Chaffee Depo., 124:21-25. Mr. Chaffee does not dispute that he refused to leave the chambers unless he was placed under arrest. The Court, therefore, finds that defendants have presented a prima facie case that Deputy Larkin and Deputy Staehely had probable cause to arrest Mr. Chaffee for a violation of California Penal Code section 602.1(b), which requires both a disruption of the public meeting and a refusal to leave.

Mr. Chaffee does not present any facts to create a material question on either issue. In his Opposition, Mr. Chaffee criticizes Deputy Larkin for relying on unnamed members of the public who supposedly informed Larkin that Mr. Chaffee started the confrontation, "despite the presence of a roomful of people who can testify that it is not true." Oppo. Br. at 3. However, Mr. Chaffee presents no testimony (by declaration or deposition) from any of the people who could testify in his favor. Moreover, Mr. Chaffee does not challenge Deputy Larkin's personal knowledge that Mr. Chaffee raised his voice – when Mr. Chaffee was not entitled to speak – to encourage Supervisor Chiu to enforce the rules and then participated in a profanity-laced shouting match. Larkin Decl., ¶ 5.

Mr. Chaffee likewise does not dispute that he refused to voluntarily leave and repeatedly told both Deputy Larkin and Deputy Staehely that he would not leave unless he was placed under arrest.

In his opposition, plaintiff relies heavily on the Rules of Order of the Board of Supervisors. Those rules provide that when the presiding officer determines that disorderly conduct has occurred, the presiding officer "shall order removed" the disruptive person; the removal shall be effected by the attendant law enforcement officer on duty "upon being so directed by the presiding

9

1  officer"; and the presiding officer "may" direct that person's arrest. Oppo. Br. at 8-9. Mr. Chaffee
2  argues that because Supervisor Chiu admits to playing no role in Mr. Chaffee's removal or arrest,
3  his removal and arrest were in violation of the Rules of Order. Those rules, however, do not
4  diminish or supersede the ability of a Sheriff's deputy to make a probable cause determination on
5  his own that a violation of Penal Code section 602.1 has occurred. Deputy Larkin had probable
6  cause to make the determination he did in Mr. Chaffee's case.

7  Viewing the evidence, even in the light most favorable to Mr. Chaffee, the Court finds that
8  probable cause existed to arrest Mr. Chaffee under Penal Code section 602.1. The City's motion
9  for summary judgment on Mr. Chaffee's false arrest and unlawful imprisonment claim is
10 GRANTED.

**B. Battery**

12  The basis for Mr. Chaffee's battery claim is that Deputy Larkin placed his hand firmly on
13  Mr. Chaffee's tricep when Mr. Chaffee was leaving the chambers. Chaffee Depo., 132:9-14; *see*
14  *also* Chaffee Depo., at 64:20-24. Deputy Larkin's grip was uncomfortable but did not cause Mr.
15  Chaffee any physical harm. Chaffee Depo., at 65:13-20.

16  To state a claim for battery under California law, plaintiff must prove that: (1) defendant
17  touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2)
18  plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's
19  conduct; and (4) a reasonable person in plaintiff's position would have been offended by the
20  touching." *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 669 (2013), as modified on denial
21  of reh'g (Jan. 28, 2013).

22  Here, there is no evidence that Deputy Larkin intended to harm Mr. Chaffee, and Mr.
23  Chaffee in his deposition admitted not only that he was not physically harmed but also that he did
24  not believe Deputy Larkin was trying to hurt him. Chaffee Depo., 65:8-20. Mr. Chaffee,
25  therefore, has failed to provide evidence that the contact was "harmful or offensive" or that
26  Deputy Larkin had the "intent" to touch Mr. Chaffee in a harmful or offensive manner.

27  Moreover, in California a police officer may use reasonable force in making a lawful
28  arrest. Cal. Penal Code § 835a. To state a claim for battery during a lawful arrest, plaintiff must

1  show that excessive or unreasonable force was used in the arrest or detention, and that the
2  unreasonable force caused the injury, damages, loss or harm. *Arpin v. Santa Clara Valley Transp.*
3  *Agency*, 261 F.3d 912, 922 (9th Cir. 2001). There are no allegations of excessive or unreasonable
4  force used by either Deputy Larkin or Deputy Staehely in plaintiff's arrest, detention,
5  transportation to 850 Bryant, or release. Plaintiff's only complaint is that Deputy Larkin's hold on
6  his tricep as he was walked out of the chambers was "uncomfortable" and done to humiliate him.
7  Chaffee Depo., at 65-67. Those allegations are insufficient as a matter of law to demonstrate
8  unreasonable force. Defendants' Motion for Summary Judgment is GRANTED on Mr. Chaffee's
9  battery claim.

## III. DEFENDANT CHIU'S LIABILITY

Plaintiff's claim against Supervisor Chiu, in his individual capacity, must be dismissed. As noted above, the only injury plaintiff claims is his arrest and removal from the chambers. The undisputed facts show that Supervisor Chiu played no role in Mr. Chaffee's removal. Chiu Decl., ¶ 10; Larkin Decl., ¶ 8; Staehely Decl., ¶ 6. While Mr. Chaffee argues that Supervisor's Chiu's "animus" against him must be established at trial,[7] Mr. Chaffee does not get to go to trial against Supervisor Chiu individually unless he raises material facts (either undisputed or disputed) that support an inference that Supervisor Chiu played a role in that arrest. Mr. Chaffee has failed to do so.

Defendants' Motion for Summary Judgment is GRANTED in favor of defendant Chiu.

## IV. PLAINTIFF'S REQUEST FOR A CONTINUANCE TO OBTAIN FURTHER EVIDENCE

Finally, Mr. Chaffee requests that if the Court is inclined to grant the defendants' motion, the Court should defer ruling on that motion to allow Mr. Chaffee to gather further evidence to support his position and allow plaintiff to have "the full measure of his day in court." Oppo. Br.

---

[7] Mr. Chaffee argues in his Opposition that Supervisor Chiu's animus towards him exists because Chiu is envious of new library branch openings in districts other than his and that Mr. Chaffee spoke out against new library openings as part of graft in City Hall. He asserts that Supervisor Chiu's animus was demonstrated by Chiu's ironic comments about the Library Commission's "patience" and tolerance of Mr. Chaffee's public comment. Opposition Br. at 10. No evidence regarding Supervisor's Chiu's alleged dislike of Mr. Chaffee is provided in Mr. Chaffee's declaration nor is any corroborating evidence cited in the Opposition.

11

at 11. A Rule 56(d) continuance is appropriate when the nonmovant submits by declaration or affidavit an explanation of why he or she cannot present facts essential to justify the opposition.

Mr. Chaffee doesn't explain what discovery he needs to oppose defendants' motion, much less why he did not seek that discovery earlier. This case has been pending since 2011, and the fact discovery cutoff (set by Judge Gonzalez Rogers) was in January 2013. Mr. Chaffee provides no explanation why he did not or could not conduct the discovery necessary to support his case prior to the January 2013 cutoff. Plaintiff's motion for a Rule 56(d) continuance is denied. *See, e.g., Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) (denying request to reopen discovery deadline when plaintiff's discovery efforts were not diligent).

## CONCLUSION

At oral argument, Mr. Chaffee asserted in essence that he was the party who had been wronged during the Board's hearing, that all of his actions were justified, that he stood on principle and that the defendants had no right to react as they did. There is no doubt that Mr. Chaffee subjectively feels morally wronged and wants to plead his case to a jury. But even when the evidence is viewed most favorably to Mr. Chaffee, he has not identified, and the Court cannot find, a disputed issue of fact that would support a legally cognizable theory that the defendants violated any law or could be liable for any cause of action that he has alleged. For the foregoing reasons, defendants' Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: December 17, 2013

_____
WILLIAM H. ORRICK
United States District Judge